UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
BERNARD H. GLATZER,

                                 Plaintiff,

-against-

BEAR, STEARNS & CO., et al.,

                                 Defendants.
------------------------------------------------------------------x

MEMORANDUM DECISION AND ORDER

04Civ 8380 (GBD)

GEORGE B. DANIELS, District Judge:

In his First Amended Complaint ("Amended Complaint"), filed in the Supreme Court of the State of New York, Plaintiff, an attorney litigating pro se, alleges causes of action premised on breach of confidentiality by Defendants Bear, Stearns & Co. ("Bear Stearns"), Weisser Johnson & Co. L.P., Weisser Johnson & Co., and Frank Weisser (the "Weisser Defendants"). Plaintiff alleges breach of a settlement agreement's material confidentiality and best efforts provisions (Count 1); a continuing conspiracy to coverup and to fraudulently conceal breach of the settlement agreement (Count 2); and fraud (Count 3). Plaintiff further alleges that Defendants engaged in continuing misappropriation of trade secrets (Count 4); continuing breach of business confidences (Count 5); continuing theft of confidential business plans (Count 6); and continuing felonious conspiracy with then-Enron executives (Count 7). Pursuant to 28 U.S.C. § 1441, Defendants removed the state action to this Court. Plaintiff moves to remand the action back to state court pursuant to 28 U.S.C. § 1447(c). Defendants oppose the motion to remand and move for dismissal of the Amended Complaint pursuant to Fed. R. of Civ. P. 12(b)(6). Plaintiff's motion to remand is DENIED. Defendants' motion to dismiss the Amended Complaint is GRANTED.

**FACTUAL BACKGROUND**

On July 1, 1997, Plaintiff, represented by counsel, filed a previous federal lawsuit against the Defendants. In that prior action, Plaintiff sued Defendants in the Southern District of New York ("federal court action") for the theft of his alleged novel idea on securitization of oil and gas. There, Plaintiff claimed that Bear Stearns shared his idea with Enron and profited therefrom. The District Court, Kevin T. Duffy, J., held that Plaintiff's idea was not novel and lacked a claim for its unauthorized use by Bear Stearns. The court granted summary judgment and dismissed the action. See Glatzer v. Bear, Stearns & Co., Inc., et al., 95-Civ-1154 (KTD) (S.D.N.Y. June 10, 1998), Ex. C.

While Plaintiff's appeal in this prior federal court action was pending, he and the Defendants entered into settlement discussions with the assistance of the Staff Counsel of the United States Court of Appeals for the Second Circuit ("Staff Counsel"). Under the Local Rules of the Second Circuit, "parties are prohibited from advising... any authorized third parties of discussions or actions taken at the conference" with the Staff Counsel. Am Compl. ¶ 8 (citing Local Rules of the Second Circuit, Appendix Part D, Guidelines for Conduct of Pre-Argument Conference Under the Civil Appeals Management Program ("CAMP Rules")). Plaintiff contends that "the parties entered into an agreement in principle for settlement of their litigation." Id. at ¶ 9.

On August 25, 1998, Bear Stearns sent a letter to the Staff Counsel informing them of the basic terms of the settlement ("Settlement Letter"). In addition to payment of a sum of money, a part of the settlement was an agreement made by Bear Stearns to use its "best efforts" to obtain a vacatur order of the summary judgment motion that was granted in its favor in the prior federal action. In the Settlement Letter, Bear Stearns explicitly stated that "the settlement is not contingent on achieving vacatur of the order since we do not and cannot control the Courts." Id. at ¶ 26.

Plaintiff also had a separate lawsuit pending in New York State Supreme Court against Enron and its affiliate. Plaintiff's lawsuit against Enron asserted similar claims as that alleged against the Defendants in the federal court action. According to Plaintiff, the sole purpose of the settlement was to allow him to proceed on his claims against Enron. In essence, Plaintiff sought to preclude Enron from asserting the defense, based on the decision in Plaintiff's federal court action, that Plaintiff was collaterally estopped from claiming that his novel idea was misappropriated.

One month after the Settlement Letter was sent to the Staff Counsel, on September 25, 1998, Enron simultaneously filed a motion for summary judgment in the state court action, and a motion to intervene in the federal district court action to prevent the vacatur of the summary judgment. In both motions, Enron stated that it "understands that the settlement between [Plaintiff] and Bear Stearns is not contingent upon the Court vacating the judgment." Id. at ¶ 15 (emphasis in original). Further, at oral argument on its motion before the state court, Enron stated that it knew the exact amount of money Plaintiff received from Bear Stearns. Plaintiff now alleges that Enron's verbatim recitation of the language of the Settlement Letter and knowledge of the settlement sum offered by Bear Stearns, "indicates unequivocally that Enron illegally received a copy of the [Settlement Letter] from Bear Stearns (and/or Weisser Inc. and Weisser both associated with Bear Stearns.)". Id. at ¶ 17.

On October 28, 1998, Plaintiff and Defendants memorialized the settlement in a written agreement (the "Written Agreement"). This agreement was confidential and not to be disclosed to any third parties. Am. Compl. ¶ 12; Written Agreement, Ex. A ¶ 10. Moreover, the Written Agreement stated that Plaintiff:

[O]n his own behalf ... hereby releases, acquits, and forever discharges Bear

3

> Stearns, Weisser-Johnson, Weisser[1] ... from any and all claims, causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs, and expenses ... known or unknown, fixed or contingent, which [Plaintiff] may have or claim to have now against any of the Defendants, or which may hereafter arise out of, relate to, or be connected with the claims raised in or that could have been raised ... or any act of commission or omission of any of the Defendants existing or occurring prior to the date of this Agreement ... .

Id. at ¶ 3.

The Agreement "sets forth the entire agreement and understanding of the parties with respect to the subject matter hereof and supercedes any and all prior agreements and understandings of the parties hereto with respect to the subject matter hereof."[2] Id. at ¶ 16. The Written Agreement states that Plaintiff and Bear Stearns would jointly use their "best efforts" to seek vacatur of the summary judgment order in the Federal Court Action. Id. at ¶ 5.

Plaintiff asserts here that the intent of the "best efforts" provision was that Defendants would expend their best efforts to achieve vacatur before the New York Supreme Court made any decision on Enron's motion for summary judgment. Am. Compl. ¶ 34. The New York Supreme Court did in fact grant summary judgment on collateral estoppel grounds.[3] Vacatur was never achieved. Plaintiff alleges Defendants, therefore, breached the confidentiality and best efforts clauses of the Written Agreement. Id. at ¶ 37. Plaintiff contends that Defendants fraudulently induced him to sign the Written Agreement because they never intended to comply

---

[1] Weisser Johnson & Co. L.P. was created in 2003. See Am. Compl. ¶ 3. Although the Written Agreement released Weisser Johnson & Co. and Frank Weisser from any liabilities, they were not signatories to the Written Agreement. Further, none of the Weisser Defendants were a party in Plaintiff's appeal to the Second Circuit. See Defs.' Mem. in Supp. Mot. Dismiss at 5.

[2] In paragraph seven of the Written Agreement, the parties "mutually covenant[ed] that neither will sue, sue further, or otherwise prosecute in any way any person or entity hereinabove released with respect to any and every claim released by this Agreement." Written Agreement, Ex. A.

[3] The New York Supreme Court order was entered on July 20, 1999. Also, in Glatzer v. Enron Corp., et al., 716 N.Y.S.2d 307 (1st Dep't 2000), the Appellate Division affirmed the order and stated that "[t]he stipulated withdrawal of plaintiff's appeal to the Second Circuit left the District Court's order intact."

with the agreement's terms. He argues that had Defendants not breached the confidentiality of the agreement, Plaintiff would have recovered the full value of his claim against Enron. Id. at ¶¶ 40, 46.

Plaintiff maintains that it was not until February 2000 that he first discovered Enron's use of confidential information in its motion to intervene in the federal court action. See Pl's Opp'n Mem. Mot. Dismiss at 11. It was only then that Plaintiff realized that Enron had received confidential information. At that time, Plaintiff notified the Defendants that they had breached the confidentiality and best efforts clauses of the Written Agreement, and that as a result he was entitled to a rescission of the Written Agreement. Am. Compl. ¶ 39.

It was not until October 2, 2001, that Plaintiff finally moved for vacatur of summary judgment in his prior federal court action. In denying the motion, the District Court rejected Plaintiff's contention that the Second Circuit issued a mandate on February 1999 holding that there was no federal jurisdiction in the case. The District Court stated, "In truth, the mandate was not, as Plaintiff contends, a court order; rather it was a mere stipulation of dismissal of the appeal and had no effect on the [Court's prior grant of summary judgment]." Glatzer v. Bear, Stearns & Co., Inc., 95-Civ-1154 (KTD) (S.D.N.Y. June 18, 2002) (internal citation omitted). The District Court further noted that Plaintiff had "moved in the Second Circuit for clarification of the mandate to indicate that there was no federal jurisdiction in this lawsuit, and the Second Circuit denied the motion in June 2000." Id.

## MOTION TO REMAND

Removal of a civil action brought in state court to federal court is proper if the district court has original jurisdiction over the action. See 28 U.S.C. § 1441(a). District courts have original jurisdiction in cases that "aris[e] under the Constitution, laws, or treaties of the United States." Id. at § 1331. According to the well-pleaded complaint rule, where the Amended Complaint on its face presents a federal question, a cause of action arises under federal law. See

5

Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 13, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983). In addressing the matter of removability, the removal statute is narrowly construed "[o]ut of respect for the independence of state courts, and in order to control the federal docket." Winne v. Equitable Life Assurance Soc'y of the United States, et al., 315 F. Supp. 2d 404, 409 (S.D.N.Y. 2003); Macro v. Indep. Health Ass'n, Inc., 180 F. Supp. 2d 427, 431 (W.D.N.Y. 2001). Further, the general remand statute, provides, in relevant part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

"Even though state law creates [the Plaintiff's] causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." Franchise Tax Bd. of Cal., 463 U.S. at 13. In the instant matter, although Plaintiff alleges state law violations, the case involves the alleged violation of a federal local appellate rule governing the confidentiality of communications to third parties about a pending settlement. Moreover, what Plaintiff seeks is the setting aside of a settlement agreement which terminated a federal action.

In Martin-Trigona v. Brooks & Holtzman, 551 F. Supp. 1378, 1382 (S.D.N.Y. 1982), that court denied the pro se plaintiff's motion to remand because all the claims were regarding an order of the federal district court pursuant to the federal local rule. The Martin-Trigona action was triggered by the admission pro hac vice of an out-of-state attorney pursuant to the local district court rule. See id. at 1379; see also Martin-Trigona v. Lavien et al., 737 F.2d 1254, 1263 (2d Cir. 1984) (recognizing same). The plaintiff brought suit claiming, among other things, that the motion to admit the out-of-state attorney was an abuse of the judicial process because it was part of a conspiracy to defraud the plaintiff of his property and to cause economic harm to his

6

business. Plaintiff moved to remand the action to state court for lack of subject matter jurisdiction. The district court denied the motion because the alleged acts and conduct involved a federal statute and a federal local rule. The court explicitly stated that there was no state court conduct or act implicated in that case.

Similarly, here, Plaintiff's breach of confidentiality allegations are premised on the secrecy obligations created by the Second Circuit's CAMP Rules. The Amended Complaint does not allege any breach of the settlement reached between the parties other than that which arises from a breach of this confidentiality requirement. The Second Circuit has continuously adjudicated violations of the CAMP confidentiality rule. See, e.g., Calka v. Kucker Kraus & Bruh, 167 F.3d 144 (2d Cir. 1999); S. R. Mercantile Corp. v. Maloney, 909 F.2d 79, 83-84 (2d Cir. 1990); Utopia Paper Ltd. v. Connelly Containers, Inc., 608 F.2d 928 (2d Cir. 1979). Further, a "federal court retains power to enforce and to consider challenges to settlements entered into in cases originally filed with the court." Ryan v. Dow Chem. Co., 781 F. Supp. 902, 915 (S.D.N.Y. 1991); see also Roberson v. Giuliani, 346 F.3d 75, 82-83 (2d Cir. 2003) ("[B]ecause the court has the general responsibility to ensure its orders are fair and lawful, it retains some responsibility over the terms of a settlement agreement ... ."). Plaintiff's prior court action was adjudicated in this district. His appeals and settlement agreement were in the federal appellate court. Although, the Amended Complaint alleges state law tort and breach of contract claims, the Amended Complaint on its face requires the consideration and application of federal law and this Circuit's local rules in an effort to set aside the terms of a settlement in a federal case. Therefore, Plaintiff's motion to remand is denied.[4]

---

[4] According to 28 U.S.C. § 1441(c), "Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates." Also, pursuant to 28 U.S.C. 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental

## MOTION TO DISMISS

A motion to dismiss should be granted where the Amended Complaint "fail[s] ... to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957); Gant v. Wallingford Bd. of Ed., 69 F.3d 669, 673 (2d Cir. 1995). In reviewing a motion to dismiss, the district court accepts the allegations set forth in the Amended Complaint as true and draws all reasonable inferences in favor of the non-moving party. See Patel v. Searles, 305 F.3d 130, 134-35 (2d Cir. 2002). However, "bald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations," and are insufficient to defeat a motion to dismiss. Citibank, N.A. v. Itochu Int'l Inc., No. 01 Civ. 6007, 2003 WL 1797847, at *1 (S.D.N.Y. Apr. 4, 2003) (Daniels, J.). Plaintiff characterize his action as a breach of contract claim. However, he is in essence seeking to repudiate the settlement of his prior federal action that he entered into with Defendants with the assistance of the Second Circuit Court of Appeals Staff Counsel.

In his opposition to the motion to dismiss the Amended Complaint, Plaintiff contends that the Settlement Letter and Written Agreement together comprise the entire settlement reached between the parties. Plaintiff thus asserts Defendants' alleged breach of the confidentiality of the Settlement Letter was in effect a breach of the whole settlement necessitating rescission of the settlement.[5] However, rescission is not an available remedy to Plaintiff for an alleged violation of the CAMP confidentiality rule. See, e.g., Calka v. Kucker Kraus & Bruh, 167 F.3d 144, 146 (2d Cir. 1999) (stating that sanctions are the proper remedy for disclosure of CAMP conference

---

jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."; Parker v. Della Rocco, Jr., 252 F.3d 663, 665-66 (2d Cir. 2001). Here, Plaintiff's related state law claims are properly removed to this Court.

[5]Although the parties dispute that the Settlement Letter contained an agreement of confidentiality, for the purposes of this motion, the Court accepts as true the allegation in the Amended Complaint that the Settlement Letter contained confidential information.

statements); S. R. Mercantile Corp. v. Maloney, 909 F.2d 79, 83-84 (2d Cir. 1990) (holding that violation of the CAMP confidentiality rule was a basis to impose sanctions); Utopia Paper Ltd. v. Connelly Containers, Inc., 608 F.2d 928, 930 (2d Cir. 1979) (denying the request for damages and not awarding any costs for breaching CAMP confidentiality rule). A party that breaches the CAMP confidentiality rule "may be censured by the court." Irving R. Kaufman, New Remedies for the Next Century of Judicial Reform: Time as the Greatest Innovator, 57 Fordham L. Rev. 253, 263 (1988) (cited in S. R. Mercantile, 909 F.2d at 84). Therefore, Plaintiff has failed to state a claim upon which relief can be granted.

Moreover, the plain and unambiguous language of the Written Agreement explicitly states that the "entire agreement and understanding of the parties with respect to the subject matter hereof and supercedes any and all prior agreements and understandings of the parties hereto with respect to the subject matter hereof." Written Agreement ¶ 16; see also Seabury Constr. Corp. v. Jeffrey Chain Corp., 289 F.3d 63, 68 (2d Cir. 2002) (stating that courts must effectuate the plain language of an unambiguous contract). In the instant matter, the Written Agreement is a binding, conclusive contract between the parties.[6] See Johnson v. Schmitz, 237 F. Supp. 2d 183, 189 (D.Conn. 2002); United States v. Int'l Brotherhood of Teamsters, et al., 816 F. Supp. 864, 873 (S.D.N.Y. 1992). Plaintiff was placed on notice of any alleged breach of confidentiality when Enron filed its motion for intervention and motion for summary judgment on September 25, 1998. Plaintiff nonetheless signed the Written Agreement on October 28, 1998, releasing Defendants from all claims "known and unknown." By signing the Written Agreement, Plaintiff waived his rights to challenge any previous alleged breach of confidentiality

---

[6]A party cannot set aside an executed settlement agreement absent special circumstances, such as a material breach of the agreement or procurement "by fraud, duress or other unlawful means." First Nat'l Bank of Cincinnati v. Pepper, 454 F.2d 626, 632 (2d Cir. 1972); see also In re Air Crash Disaster at Kennedy Int'l Airport on June 24, 1975, 687 F.2d 626, 629 (2d Cir. 1982).

of the Settlement Letter. The mere allegation by Plaintiff that he discovered the alleged breach of the Settlement Letter a year and a half later when he more thoroughly reviewed his files, does not indicate that Plaintiff was in possession of new facts that were not available or provided to him <u>before</u> signing the Written Agreement.[7] Additionally, Plaintiff alleges no act or conduct committed by Defendants <u>after</u> the signing of the Written Agreement that would constitute a breach of that agreement.[8]

     Moreover, Plaintiff's argument that but for Defendants' breach of the Settlement Letter, Enron would not have moved for summary judgment in the state court action or for intervention in Plaintiff's federal court action is belied by the record. The District Court's dismissal of Plaintiff's case on summary judgment was never vacated. Further, the New York Supreme Court's grant of summary judgment on collateral estoppel grounds relied specifically on the dismissal that was never vacated and not, as suggested by Plaintiff, because of any improperly disclosed confidential information that Enron possessed when it made its motion to the New York Supreme Court. See <u>Glatzer v. Enron et al.</u>, Index No.16465/96, (N.Y. Sup. Ct. July 9, 1999), Defs' Mot. to Dismiss, Ex. F (finding that the stipulation was not an order of the Second Circuit Court of Appeals vacating the District Court's order). Moreover, Plaintiff did not even

---

[7] Plaintiff asserts that he did not read Enron's motion to intervene in the federal court action because he was mentally and financially pre-occupied with his mother's recent passing. Moreover, he states that shortly after the Settlement Letter on August 25, 1998, but before the October 28, 1998, signing of the Written Agreement, Defendants' attorney contacted Plaintiff's attorney "for the express purpose of <u>denying</u> that <u>any</u> of his clients had breached the contractual confidentiality of his <u>own</u> settlement letter." Pl. Opp'n to Mot. Dismiss at 10 (emphasis in original). Despite this, Plaintiff concedes it never occurred to him or his attorneys that the Defendants had breached the Settlement Letter, nor did they contact Defendants' attorney to request an explanation. <u>Id</u>.

[8] Although now <u>pro se</u>, at the time of the signing of the Written Agreement and throughout the pendency of his federal and state court actions, Plaintiff was represented by counsel. There is no indication that Plaintiff did not knowingly and voluntarily sign and agree to the terms of the Written Agreement. See <u>Winkler v. Kingston Hous. Auth. et al.</u>, 686 N.Y.S.2d 513, 515 (3d Dep't 1999); <u>Chase v. Suffolk County Police Comm'r</u>, 504 N.Y.S.2d 58, 59 (2d Dep't 1986).

move for vacatur of the prior federal court action until October 2001. The alleged breach of the Settlement Letter did not arm Enron with an otherwise unavailable defense. Thus, Plaintiff's claims of contractual breach (Count 1), fraudulent concealment (Count 2) and fraud (Count 3) are dismissed.

Plaintiff's remaining claims in the instant case are similarly barred by the doctrines of res judicata and collateral estoppel, which "upon the generally recognized public policy that there must be some end to litigation and that when one appears in court to present his case, is fully heard, and the contested issues is decided against him, he may not later renew the litigation ... ." Heiser v. Woodruff, 327 U.S. 726, 733, 66 S.Ct. 853 (1946) (citation omitted); see also In re Teltronics Services, Inc., 762 F.2d 185, 190 (2d Cir. 1985) (stating that res judicata is a "principle of peace.") (citation omitted). In counts four through seven of the Amended Complaint, Plaintiff alleges that he invented "a unique, novel, and innovative ... form of financing for Texas independent oil and gas producers based on the securitization ... of formerly extinct oil and gas production payments". Am. Compl. ¶ 53. He also contends that Defendants conspired to conceal their misappropriation of his idea by communicating it to Enron. Id. at ¶¶ 111-128. In his previous federal court action, Plaintiff similarly alleged that he "devised a novel, elegant, original and unique business plan to fill the void in the market for financing independent oil and gas", which employed "the new technique of securitization to transform an almost extinct species of oil and gas... ." Am. Compl., Federal Court Action, Ex. D at ¶¶ 7-8.

Where there is (1) a final judgment on the merits of an action (2) rendered by a court of competent jurisdiction (3) the case involves the same parties and their privies, and (4) involves the same cause of action, res judicata bars a later litigation of those same causes of action. See In re Teltronics Services, Inc., 762 F.2d at 190; see also Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981); Waldman v. Village of Kiryas Joel, 207 F.3d 105, 108 (2d Cir. 2000). Moreover, under the doctrine of collateral estoppel, a party, or


one in privity with a party, cannot re-litigate an issue that was previously decided. See NAS Elecs., Inc. v. Trans Tech Elecs., 262 F. Supp. 2d 134, 143 (S.D.N.Y. 2003); Whitney Holdings, Ltd. v. Givotovsky, 988 F. Supp. 732, 737 (S.D.N.Y. 1997). In Plaintiff's previous federal action, the district court entered a judgment on the merits against Plaintiff. The substantive issues re-asserted here by Plaintiff are identical to the issues addressed by the district court in his prior federal court action. Plaintiff is therefore barred from asserting them again here.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is DENIED. Defendants' motion to dismiss the Amended Complaint is GRANTED. Plaintiffs' Amended Complaint is dismissed in its entirety.[9]

Dated: New York, New York
July 5, 2005

SO ORDERED:

*[signature]*
GEORGE B. DANIELS
United States District Judge

---

[9] It is not necessary for the Court to address other arguments raised in favor of dismissal.

12